THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| LANCE RINCK,<br><br>                                Plaintiff,<br>v.<br><br>PETE BUTTIGIEG, SECRETARY<br>DEPARTMENT OF TRANSPORTATION,<br>(FEDERAL AVIATION ADMINISTRATION)<br><br><br><br>                                Defendant. | Case No.<br><br>**JURY TRIAL REQUESTED** |

**COMPLAINT**

      PLAINTIFF, Lance Rinck, an employee of the Department of Transportation in Olathe, Kansas states his cause of action against Defendant Pete Buttigieg, and the Department of Transportation (Federal Aviation Administration—"FAA") as follows:

1. This is an action for age discrimination and retaliation in the Agency's non-selection into a supervisory role. Plaintiff's claim for age discrimination arises under the Age Discrimination in Employment Act (ADEA), as amended, 29 U.S.C. § 621 *et. seq.* His claim for retaliation arises under the Americans with Disability Act, 42 U.S.C. § 12101, *et. seq.* (ADA) as he previously filed charges for disability discrimination implicating an individual involved in the selection decision.

2. Plaintiff is over 40. He is an Air Traffic Controller ("ATC") for Defendant Agency. At the time of the events giving rise to this claim, he had 33 years of experience as an ATC.

3. Defendant Pete Buttigieg is the Secretary of the Department of Transportation, and in that capacity is the Chief Executive Officer of the Department of Transportation (FAA).

4. Prior to applying for the promotion at issue in this claim, Plaintiff filed a charge of discrimination implicating an individual involved in the selection.

5. Plaintiff seeks all available legal and equitable remedies for claims under the ADEA and the ADA, including reinstatement, back pay, front pay, compensatory damages, punitive damages, and attorneys' fees.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1331, which provides original jurisdiction in this Court for suits arising under federal law.

7. Venue is proper in the United States District Court for District of Kansas under 28 U.S.C. § 1391(b)(2), because the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8. At all times relevant to this lawsuit, Plaintiff was a resident of Olathe, Kansas.

9. At all times relevant to this lawsuit, Defendant has maintained offices in this District as well as all over the nation. Defendant is an "employer" within the meaning of the ADEA and the ADA.

## ADMINISTRATIVE PROCEEDINGS

10. On June 21, 2023, Plaintiff filed a timely formal charge of discrimination with the FAA's EEOC office. (See Exhibit A, attached).

11. The Agency issued a Final Agency Decision (FAD) on June 25, 2024.

12. Plaintiff sought reconsideration of the decision, and on October 21, 2024, his request was denied. (See Exhibit B, attached.).

13. This complaint is filed within 90 days of Plaintiff's receipt of the decision on the request for reconsideration. Plaintiff has fully complied with all administrative prerequisites before filing this action.

## FACTUAL BACKGROUND COMMON TO ALL COUNTS

14. Plaintiff has been an Air Traffic Control (ATC) Specialist with the FAA since 1989. At the time of the non-selection, Plaintiff was 54 years old.

15. Plaintiff has spent the last 25 years of his career in the Olathe facility where he currently works.

16. During his tenure in Olathe, Kansas, Plaintiff has served in a variety of capacities. For instance, during his tenure in Olathe, Plaintiff has worked as Controller in Charge (CIC) for at least 100 hours. In that capacity, Plaintiff essentially served in a quasi-supervisory role.

17. Plaintiff has also served in the Quality Control office, training other controllers, and has been responsible for implementing schedule changes.

18. Plaintiff also has extensive experience with on-the-job training and has been an On-the-Job-Training-Instructor (OJTI) for over 30 years.

19. During the entirety of his tenure as an ATC, Plaintiff has never been disciplined.

20. Plaintiff's performance reviews have all been positive.

21. Outside of the circumstances giving rise to this complaint, no management official had ever suggested that Plaintiff required additional training or lacked the necessary skills to do his job.

22. Absent a waiver, an Air Traffic Control Specialist must retire at age 56.

23.    In 2021, Plaintiff filed a charge of discrimination asserting that the Agency's mandatory requirement that he wear a mask at work amounted to disability discrimination because he had claustrophobia.

24.    In his complaint, Plaintiff identified David Downum, the Air Traffic Facility Manager, as the responsible management official.

25.    Following Plaintiff's EEO complaint, Downum was hostile to Plaintiff. On information and belief, Downum withheld important information from Agency management officials who were assisting with Plaintiff's requests for accommodation, and he attempted to undermine management's efforts to assist Plaintiff with finding appropriate work. He also opined that Plaintiff had fabricated his complaints because of other incidents.

26.    In or about October 2022, Plaintiff applied for a supervisory air traffic control position (AGL-AT-22-0256-80960).

27.    Plaintiff was eligible and qualified for the supervisory role, and, had he been selected, he would have received a pay increase of 15%. That increased pay would have contributed significantly towards Plaintiff's "high three" for retirement.

28.    Plaintiff was not given any information about how the selection process was proceeding.

29.    In or about January 2023, upon learning that he was not granted an interview for the position, Plaintiff contacted David Downum to try to get information about the selection process.

30.    Specifically, Plaintiff wrote:

> "Hi David
> I bid on this last supervisory opening. Rumors started going around that they had made the selections already. I never got notified for an interview. I don't see any way that I wouldn't qualify for an interview. I know this is handled outside of the building but do you have a contact that can give me an explanation?
> Thanks Lance Rinck

31. As set forth in the email above, at the time he contacted Downum, Plaintiff believed that the selections were being done by managers outside of the building and that Downum was not involved in the selection process.

32. Even though he had been involved in the selection process, Downum did not address Plaintiff's misstatement or attempt to correct Plaintiff's misconception that Downum was not involved in the process. Instead, he provided an email address for a request for feedback about why Plaintiff had not been selected.

33. Plaintiff immediately sent an email to the address Downum provided. Kristen Tedder responded that she would provide information.

34. Plaintiff waited approximately 6 weeks for Tedder to provide additional information as she had promised.

35. On February 9, 2023, Plaintiff learned for the first time that all the selectees for the position were younger than he was and had considerably less experience.

36. Prior to learning who the selectees were, Plaintiff had no knowledge of who had been interviewed for the position.

37. Plaintiff started the EEO process promptly upon developing reasonable suspicion that his age had illegally disqualified him from the process.

38. In April 2023, Tedder sent an email apologizing for the delayed response to Plaintiff's request for feedback. She further reported that Downum had been involved in the selection process and had indicated that Plaintiff should not be selected because he needed "further development."

39. The April 2023 email was the first time Plaintiff learned of Downum's involvement in the process.

40. The Agency opened another supervisory bid (AGL-AT-23-0111-83891) in April 2023 after not receiving an adequate number of qualified applicants for the first bid.

41. In April 2023, Plaintiff bid on the second supervisory position opened.

42. In May 2023, Plaintiff and the Agency attempted to mediate Plaintiff's charge of discrimination regarding his non-selection for the supervisory position he had sought in October 2022.

43. During the mediation, the Agency representative reiterated that Downum said that Plaintiff needed further development before he would be suited for a supervisory role. The Agency representative encouraged Plaintiff to communicate directly with Downum to understand what sort of development Downum believed Plaintiff lacked.

44. Plaintiff sought additional information from Downum by email in May 2023.

45. In his response, Downum continued to equivocate about his involvement in the selection process and encouraged Plaintiff to speak with the Operations Manager about the selection process.

46. Plaintiff sought that feedback and was only told that the "consensus" of the management team was that he would not be a good fit for FAA leadership at the time. He was not given any additional information.

47. Plaintiff's first line supervisor is Torrez Buchanan. The selection process did not include any conversations with Mr. Buchanan about Plaintiff's work.

48. On information and belief, Plaintiff has at least a decade more experience than each of the selectees for the supervisory role.

49. On information and belief, Plaintiff is at least a decade older than the selectees, who are all under 40 years of age.

6

50. On information and belief, Plaintiff has a broader skill-set as an ATC than the selectees. One of the selectees is not CIC qualified.

51. The Agency improperly based its decision on the selection for the supervisory role on Plaintiff's age and his previous protected action.

## COUNT I—AGE DISCRIMINATION

52. At the time of the non-selection, Plaintiff was over 40 years old and well-qualified for the supervisory role for which he applied.

53. On information and belief, at the time of the non-selection, the selectees were under 40 years of age, or Plaintiff was significantly older than they were.

54. Plaintiff was more qualified than the selectees to perform the role of supervisor.

55. The statement that Plaintiff was not selected because he needed additional development was pretextual for illegal motivation based on Plaintiff's age.

56. As shown by the foregoing, Defendant and its agents intentionally discriminated against Plaintiff based on his age in violation of the ADEA when it did not select him for a supervisory position and instead selected younger less qualified candidates and gave a pretextual reason for its selection decision.

57. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

58. As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, inconvenience, mental anguish, and related compensatory damages.

59. Defendant's conduct was willful, thereby entitling Plaintiff to an equal amount as liquidated damages and other appropriate equitable relief.

60.     Plaintiff is entitled to recover from Defendant reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff asks that the Court enter judgment in his favor on Count I, finding that he has been subjected to unlawful discrimination prohibited by the ADEA, for an award of back pay, including lost fringe benefits, bonuses, costs of living increases, and other benefits, including interest; for an award of front pay in a reasonable amount; for an award of compensatory and liquidated damages under the ADEA, for his costs expended; for his reasonable attorneys' and expert's fees; and for such other relief as this Court deems just and proper.

## COUNT II- RETALIATION

61.     Plaintiff engaged in protected actions when he participated in the EEO process by filing a complaint for disability discrimination identifying David Downum as the responsible management official.

62.     After and because of Plaintiff's protected actions, Downum treated Plaintiff with hostility, attempted to undermine his efforts to obtain appropriate accommodations or find other work that suited his accommodations.

63.     After and because of Plaintiff's protected actions, Downum repeatedly misled Plaintiff about Downum's involvement with the selection process for the supervisory role Plaintiff sought, which put Plaintiff at a disadvantage for understanding the basis for the nonselection.

64.     After and because of Plaintiff's protected actions, Downum falsely stated that Plaintiff needed additional development before he could be a supervisor so Plaintiff; thus destroying any opportunity Plaintiff had for advancement.

65.     Defendant unlawfully retaliated against Plaintiff for his protected activity. Defendant knowingly used false, pretextual reasons to mask its unlawful retaliation. Defendant's conduct

violated Plaintiff's rights under the ADA and was undertaken willfully and maliciously so as to support an award of punitive damages under ADA.

WHEREFORE, Plaintiff asks that the Court enter judgment in his favor on Count II, finding that he has been subjected to unlawful retaliation in violation the ADA; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases, and other benefits, including interest; for an award of front pay in a reasonable amount; for an award of compensatory damages, for her costs expended; for her reasonable attorneys' and expert's fees; and for such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ *Mark V. Dugan*
Mark V. Dugan, KS #23897
mark@duganschlozman.com
Heather J. Schlozman, KS #23869
heather@duganschlozman.com
Dugan Schlozman, LLC
8826 Santa Fe Drive, Suite, 307
Overland Park, Kansas  66212
Telephone: (913) 322-3528
Facsimile: (913) 904-0213

**Counsel for Plaintiff**